607 A.2d 285

**COMMONWEALTH of Pennsylvania**

v.

**Oscar Dale SLOAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1991.

Filed April 22, 1992.

Joseph E. Buckley, Jr., Brookville, for appellant.

Christopher Shaw, Asst. Dist. Atty., Sykesville, for Com., appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

Oscar Dale Sloan appeals from the judgment of sentence entered following a conviction by a jury of violating 75 Pa.C.S.A. § 3731(a)(4)[1] of the Vehicle Code (driving under the influence of alcohol). Appellant's post-trial motions were denied, and he was sentenced to a term of 30 days to 1 year in the Jefferson County Jail and to pay a $510.00 fine. We reverse.

On May 27, 1989, Officer Perry Ames of the Brookville Police Department arrested appellant for driving under the influence of alcohol. Using the Intoxilyzer 4011 (AS), Officer Bickle performed a breath test on appellant to determine his blood alcohol level. At the trial, the Commonwealth presented a Certificate of Breath Testing Device Calibration dated December 21, 1988 and a Certificate of

---

1. Driving under the influence of alcohol or controlled substance (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . .

    (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.
75 Pa.C.S.A. § 3731(a)(4).

Breath Testing Device Accuracy dated May 4, 1989. Appellant's test revealed a .158% blood alcohol level.

*To counter the Commonwealth's evidence on the accuracy of the blood alcohol reading, the defense presented expert testimony.* Walter Frajola, Ph.D., testified that the Intoxilyzer is programmed to make several assumptions about the person being tested. The Intoxilyzer assumes that the person being tested is in the post-absorptive phase of alcohol metabolism because that is when the test is supposed to be administered. If the machine is not administered in the post-absorptive phase, the range of error will be anywhere from a low of thirty percent but as high as two hundred and thirty percent.

Dr. Frajola also testified that the Intoxilyzer was subject to at least fifty percent error when used to measure the blood alcohol level in the post-absorptive phase. Dr. Frajola opined to a reasonable degree of scientific certainty that appellant was in the pre-absorptive or absorptive stage of alcohol metabolism meaning that the range of error during his test was anywhere from thirty to two-hundred and thirty percent. According to the doctor, in the scientific community, the Intoxilyzer 4011 (AS) is not accurate in the pre-absorption phase. The Intoxilyzer's programming assumes, for everyone, that there is twenty-one hundred times as much alcohol in your blood as there is in your breath; the machine measures the amount of alcohol in your breath and electronically converts it to what it believes would be a person's blood alcohol by multiplying by twenty-one hundred. However, in the general population, the ratio of alcohol in the breath to alcohol in the blood can vary from a low of eleven hundred and forty-two to one to a high of thirty-four hundred and eighty seven to one.

The doctor further testified that the Intoxilyzer also assumes that everyone tested has a body temperature of 37 degrees Centigrade although variations of two degrees Centigrade are recognized for the human body. Where the machine assumes that the body is a certain temperature and there is a two degree Centigrade difference, the results

produced by the machine would display an eighteen percent or more error. The machine also assumes that everyone tested has the same concentration of solids or particles in the blood. The percentage of particulates in a blood sample determines how fast the alcohol will leave the blood and go into the lungs. If a person has few solids and few cells, more liquid is present; therefore, the alcohol will be dissolved in a larger liquid and be more dilute when it is exposed to the air of the lungs and will go into the lungs slowly. If a person has a large number of red cells, a large number of hemoglobin and a high particulate, then the alcohol has less liquid to move around in; therefore, it will escape into the air of the lungs faster. This assumption accounts for approximately a minus two percent to a plus five percent error in the test results. Dr. Frajola stated that the same individuals with the same amount of alcohol in their blood, but differing amounts of red cells will provide various blood alcohol results.

The following are the three issues raised in this appeal:

1. Whether the trial court denied appellant a fair trial by, in essence, directing a verdict of guilty because the trial court charged the jury to presume that the breath test result (.158) was accurate, in spite of defense counsel's brief to the contrary and evidence to the contrary?

2. Whether the trial court denied appellant a fair trial by refusing to charge the jury that they did not need to presume that the test results were accurate?

3. Whether the determination of guilt or innocence in prosecutions for violations of 75 Pa.C.S.A. § 3731 should be effectively transferred from the jury to the intoxilyzer machine and intoxilyzer operator by virtue of an instruction to the jury that 75 Pa.C.S.A. § 1547(C)(1) Certificates of calibration and accuracy created a presumption of the accuracy of the blood alcohol level determination of the intoxilyzer without a cautionary instruction by the trial court of the jury's right to determine that intoxilyzer findings in a

particular instance are inaccurate consistent with the applicable case law, Article I, Section 6 of the Constitution of the Commonwealth of Pennsylvania and the Fourteenth Amendment to the Constitution of the United States?

The aforementioned issues raised by appellant are interrelated and shall be discussed simultaneously.

"In evaluating a jury charge for prejudicial and reversible error, the charge must be construed as a whole. 'Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls.'" *Commonwealth v. Hess*, 349 Pa.Super. 440, 503 A.2d 448, 449 (1986).

■ Defense counsel objected to the following instruction given by the trial court:

I would further instruct you that in this case the Commonwealth has introduced into evidence a Certificate of Calibration, as to the Intoxilyzer equipment used in this case, and that the defendant's blood—that tested the defendant's blood alcohol content, and has also introduced into evidence Certificates of Accuracy as to the Intoxilyzer. These Certificates of Accuracy shall be presumed as presumptive evidence of the accuracy of the breath test results.

Trial transcript, 9/20/90 at 241.

Appellant argues that the trial court improperly instructed the jury that the certificate of calibration and the certificate of accuracy constituted presumptive evidence of the accuracy of the breath test results, and the court also refused to qualify this charge with respect to the Intoxilyzer results by explaining to the jury its right to make a finding of fact contrary to the Intoxilyzer results. Appellant maintains that the court in effect advised the jury that the introduction of the certificates of accuracy and calibration required the jury to accept as accurate the blood alcohol level measurement of the Intoxilyzer as a matter of law.

The Pennsylvania legislature has established by statute the requirements for the admissibility of chemical tests taken to determine blood alcohol content. The relevant section of the Vehicle Code provides:

(c) Test results admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. *A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.*

75 Pa.C.S.A. § 1547(c)(1) (emphasis added). The above foundation was laid by the Commonwealth and the Intoxilyzer results were admitted into evidence.

We must determine whether, viewing the jury charge as a whole, the trial court's instruction effectively precluded the jury from returning a verdict of not guilty. Relying upon *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), appellant contends that the judgment must be reversed due to the preemption by the trial court of

the jury's duty as a finder of fact by means of an instruction which could reasonably have been interpreted by the jury to accept as true the results of the Intoxilyzer tests.

In *Sandstrom v. Montana,* the defendant was charged with and found guilty of deliberate homicide in that he purposely or knowingly caused the death of another. The trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," over the objection of the defendant that such instruction had the effect of shifting the burden of proof on the issue of purpose or knowledge. The Supreme Court stated that a reasonable jury could have interpreted the presumption as "conclusive," not technically a presumption at all, but rather as an irrebuttable direction by the court to find intent once persuaded by the facts triggering the presumption. The jury also could have interpreted the charge as a direction to find intent upon proof of the defendant's voluntary acts, unless the defendant proved the contrary by some quantum of proof which may have been considerably more than "some" evidence, thereby effectively shifting the burden of persuasion on the element of intent. The Court further stated:

As in *Morissette* [*v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)] and [*United States v.*] *United States Gypsum Co.,* [438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)], a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The

State was thus not forced to prove 'beyond a reasonable doubt ... every fact necessary to constitute the crime ... charged,' 397 U.S. [358], at 364 [90 S.Ct. 1068, 1073, 25 L.Ed.2d 368], and defendant was deprived of his constitutional rights as explicated in *Winship*.

A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found deficient in *Mullaney v. Wilbur*, 421 U.S. 684 [, 95 S.Ct. 1881, 44 L.Ed.2d 508] (1975).

*Sandstrom v. Montana*, 442 U.S. at 524, 99 S.Ct. at 2459.

Presently, the trial court explained that its charge merely informed the jury that the legislature has given "certain presumptive probative value to certificates of calibration and accuracy issued by a qualified person." (Trial court opinion, 6/17/91 at 3). The trial court reasoned that such a presumption, a presumption of probative value, is referred to as a "presumption of fact" distinguishing it from a "presumption of law". Elaborating upon the difference between a presumption of fact and a presumption of law, the trial court quoted our supreme court in *Watkins v. Prudential*, 315 Pa. 497, 173 A. 644 (1934):

A presumption is in its characteristic feature a rule of law laid down by a judge, and attaching to one evidentiary fact certain procedural consequences as to the duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the legal consequences attached to it.... A 'presumption of fact,' in the loose sense, is merely an

improper term for the rational potency, or probative value, of the evidentiary fact, regarded as not having this necessary legal consequence. They are, in truth, but mere arguments,' and 'depend upon their own natural force and efficacy in generating belief or conviction in the mind.' (Greenleaf, Evidence, sec. 44). They have no significance as far as affects the duty of one or the other party to produce evidence, because there is no rule of law attached to them, and the jury may give whatever force or weight it thinks best.

*Watkins v. Prudential*, 315 Pa. 497, 173 A. 644, 647.

Instantly, the trial court concluded that the "presumption of fact" created by Section 1547(c)(1) of the Vehicle Code should not be termed a "presumption" since presumptions are "declarations of 'the rational potency, [sic] or probative value, of the evidentiary fact.' " (Trial court opinion, 6/17/91 at 4).

In *Watkins, supra,* the supreme court further stated: So long as the law attaches no legal consequences in the way of a duty upon the opponent to come forward with contrary evidence, there is no propriety in applying the term 'presumption' to such facts, however great their probative significance. The employment here of the term 'presumption' is due simply to historical usage, by which 'presumption' was originally a term equivalent, in one sense, to 'inference'. * * * There is in truth but one kind of presumption; and the term 'presumption of fact' should be discarded as useless and confusing.

Reiterating language utilized in *Watkins,* our supreme court in *Allison v. Snelling & Snelling, Inc.,* 425 Pa. 519, 229 A.2d 861 (1967), determined that, at most, a presumption of fact is a mere argument, and, by itself, the presumption does not contribute any evidence and has no probative value. When balancing the evidence, a presumption will not tip the scale since nothing tips the scale but evidence; and the presumption, being a legal rule or a legal conclusion, is not evidence. *Allison, supra.* Moreover, a presumption, not being evidence, cannot be weighed as evidence, since it

gives way the instant that proof to the contrary is introduced. *Id.*[2]

The Commonwealth contends that, reviewing the charge as a whole, it is apparent that the use of the term presumed merely refers to a permissible inference and that the jury was not bound to accept the results of the Intoxilyzer. The Commonwealth directs our attention to *Commonwealth v. Hess,* 349 Pa.Super. 440, 503 A.2d 448 (1986), and *Commonwealth v. Crum,* 362 Pa.Super. 110, 523 A.2d 799 (1987). Both of those cases involved a violation of section 3731(a)(1)[3] of the Vehicle Code. In those cases, the same jury instruction was given by the same trial judge and this court affirmed the judgment in *Hess* but reversed the judgment in *Crum.*

In *Hess,* the defendant complained that the trial court improperly instructed the jury that if the jury found that the test results were accurate, then a conclusive presumption would be raised that defendant was not capable of driving. Defendant claimed that this conclusive presumption relieved the Commonwealth of its burden to prove every element of the offense of 75 Pa.C.S.A. § 3731(a)(1). On appeal, this court decided that the charge taken as a whole made clear that the test results raised a nonconclusive presumption which the jury was free to accept or reject, and the trial court also charged that the presumption was not conclusive and the testimony relating to the test result should be weighed with all the other evidence.

In *Crum,* the defendant was also convicted of violating section 3731(a)(1) of the Vehicle Code. The defendant argued that the trial court èrred by instructing the jury that a test result of .10% or more required them to find that he

2. *See generally* Edmund M. Morgan, *Presumptions,* 12 WASH.L.REV. (1937).

3. § 3731. Driving under influence of alcohol or controlled substance
   (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving.
   75 Pa.C.S.A. § 3731(a)(1).

was under the influence, when he was only charged with section 3731(a)(1) and not section 3731(a)(4). (See footnote 1). The trial court instructed the jury as follows:

> Any person who has alcohol by weight in their blood of .10 or more, under those circumstances, the test result requires you to find that the defendant was under the influence of alcohol. What this means is that the test result, if accepted by you as accurate and reliable, is conclusive evidence that the defendant was under the influence of alcohol and requires you to so find.

However, where a defendant is only charged with section 3731(a)(1), a .10% test result is but one piece of evidence to be considered in deciding whether the person was under the influence. We concluded that the judge's charge requiring the jury to find that a defendant with a .10% blood alcohol level was under the influence was erroneous and reversed the judgment.[4]

The Commonwealth asserts that because the sentence was affirmed in one and vacated in the other, there is a distinction between the two cases. In *Crum*, it was noted that the same charge by the same judge was given in *Hess*, but the two cases were distinguished on the facts. In *Crum*, no other evidence was presented to establish intoxication besides the test results. On the other hand, in *Hess*, there was a finding of sufficient evidence beyond that of the blood alcohol level to establish that the defendant was intoxicated and incapable of safe driving. The Commonwealth, therefore, contends that the jury charge of the presumption was not improper but only became a problem as applied to the facts of the case.

In *Crum*, the more recent of the two cases, we stated that "the judge's charge to the jury in the instant action

---

4. We note that the decision further stated that if a defendant is specifically charged under section 3731(a)(4) and evidences a blood alcohol content of .10%, it is conclusively proven that the person was driving under the influence, and the instruction would be proper. However, since section 3731(a)(4) was not at issue in *Crum*, this statement goes beyond the question presented and is *obiter dictum* lacking any binding force.

was improper insofar as it required the jury to find that the defendant was under the influence of alcohol if his blood/alcohol was .10 percent or more." *Id.* at 803. We also stated that "a charge pursuant to section 3731(a)(1) must speak of permissible inferences." *Id.* Although the same jury charge was given in *Crum* and *Hess*, the judgment was affirmed in *Hess* since there was other evidence of intoxication. If a jury instruction included an improper presumption which required the jury to make a certain finding instead of employing a permissible inference, the instruction would be erroneous, regardless of the surrounding facts. The two cases are not easily reconciled; it seems that a harmless error type analysis may have been applied in the *Hess* case since other evidence was presented to prove the defendant's intoxication. In *Crum*, however, such an analysis would not have been appropriate since no other evidence of intoxication was presented against the defendant in that case.

*Hess* and *Crum* both cite the Pennsylvania supreme court case *Commonwealth v. Difrancesco*, 458 Pa. 188, 329 A.2d 204 (1974), which is also relied upon by appellant. *Difrancesco* analyzes the the pre–1982 version of 75 Pa.C.S.A. § 1547 which contained presumptions.[5] Although repealed,

**5.** The amended statute applicable to the case at bar now reads:
**(d) Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:
(1) That the amount of alcohol by weight in the blood of the person tested is 0.05% or less, it shall be presumed that the person tested was not under influence of alcohol and the person shall not be charged with any violation under section 3731(a)(1) or (4) (relating to driving under influence of alcohol or controlled substance), or if the person was so charged prior to the test, the charge shall be void ab initio. This fact shall not give rise to any presumption concerning a violation of section 3731(a)(2) or (3).
(2) That the amount of alcohol by weight in the blood of the person tested is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol.
(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.

the supreme court's analysis of the statute in that case will be helpful in our disposition of the issue in the case at bar. In *Difrancesco*, defendants were convicted of operating a vehicle while under the influence of alcohol and blood tests revealed alcohol percentages over .10%. The supreme court was asked to decide whether section 624.1 of the Vehicle Code infringed upon the constitutional rights of defendants because it provided that persons whose test results were .10% or more alcohol by weight in the blood "shall be presumed" to be under the influence of intoxicating liquor. The supreme court held that the convictions would stand and that the statute passed constitutional muster. The court also decided that "what is described in 624.1(c) of the Vehicle Code as a 'presumption' is really no more than an inference which the jury may accept or reject in the light of all the evidence in the case. If the statute is read as a part of the court's charge, the noncompulsory nature of this inference must be brought home to the jury." The court also pointed out that

> More is required than just a bare recitation of the statute. The concept of a presumption has caused confusion among lawyers as well as laymen, and the unqualified use of this word in the charge of the court may mislead jurors into think [sic] they are bound to accept the incriminating inference. The jury should be instructed that the test results are evidence that the defendant was under the influence of intoxicating liquor, and permit a finding to that effect, but that such a finding is not mandatory; that the test results should be considered together with all the other evidence in the case; and that if there is a reasonable doubt in the minds of the jurors as to whether

75 Pa.C.S.A. § 1547(d). It would appear that the legislature intended any presumptions, if presumptions there be, regarding the actual blood test results in evidence in any case, should work to the benefit of a defendant but not against him. Under subsection (3) there is no presumption which attaches to the admissibility of a particular test result of .10% or more. Rather, it is but one evidentiary fact to be considered by the jury.

the defendant was under the influence of intoxicating liquor, they should return a verdict of 'not guilty'.

*Difrancesco,* 458 Pa. at 199–200, 329 A.2d at 211.

After thoroughly reviewing the jury instruction, the court concluded that the charge given in that case appeared to be adequate in that the trial court made it clear to the jury that the inference was not mandatory. *Cf. Commonwealth v. Gearhart,* 253 Pa.Super. 238, 384 A.2d 1321 (1978) (The defendant's conviction was reversed in a prosecution for driving with a .10% or more blood alcohol content where the trial court instructed the jury that as long as the Commonwealth proved that defendant's breathalyzer results were .11%, then the guilt of defendant was established. A later attempt to caution the jury that the presumption was not absolute failed when the trial court followed the cautionary instruction with a statement that it was a presumption that defendant was under the influence if the test showed results of .10% or more).

■ Whether under the old Vehicle Code or the amended Vehicle Code, it is clear to this court that a defendant will not be conclusively presumed under the influence of alcohol as a result of a .10% blood alcohol level.[6] Although the statute previously stated that if the defendant registers a .10% test result, "it shall be presumed" that the person was under the influence, this language only referred to a stan-

6.  *See Commonwealth v. Modaffare,* 526 Pa. 631, 601 A.2d 1233 (1992) (Cappy, J., and McDermott, J., dissenting) (Although defendant's blood sample revealed a .108% blood alcohol level, his conviction of driving while blood alcohol is .10% or greater was reversed by our supreme court due to the lapse of one hour and fifty minutes between his accident and the taking of the blood sample because of the testimony provided by the physician that a person's blood alcohol level fluctuates with time and, depending on when defendant stopped drinking, his blood alcohol level may have been below .10% at the time of the accident. The court held that the record left the jury free to speculate about the defendant's blood alcohol level at the critical time, and the evidence did not establish beyond a reasonable doubt that defendant's blood alcohol level exceeded the legal limit while driving. It is significant to note that the court referred to strong and weak *inferences* of guilt, not presumptions, as a result of blood alcohol tests in excess of .10%).

dardized permissible inference. *Commonwealth v. Hernandez,* 339 Pa.Super. 32, 488 A.2d 293 (1985).

[W]here the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. *Id.,* 339 Pa.Superior Ct. at 48, 488 A.2d at 301, quoting *Difrancesco,* 458 Pa. 188, 193–194, 329 A.2d 204, 208, n. 3.

In *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263 (1986), this court held that a blood alcohol test result can, by itself, support a conviction for a violation of section 3731(a)(4), but the test results do not compel the fact finder to reach this conclusion where there is competent evidence challenging the results. The weight to be accorded the test results then properly rests with the finder of fact. *Id.*

In the case *sub judice,* Officer Bickle testified that he fulfilled the training requirement in the use of the Intoxilyzer equipment, and that the equipment was approved by the Departments of Health and Transportation. The officer also testified that the equipment had been calibrated and tested for accuracy within a period of time and in a manner specified by the regulations of the Departments of Health and Transportation. *See* 67 Pa.Code § 77.21 *et seq.* (Equipment and Training required for administering chemical tests). Once the accuracy inspection procedure and the calibration procedure are satisfactorily completed, the test records shall be recorded on certificates of a type approved by the Department of Transportation and shall be signed and dated. 67 Pa.Code § 77.25(c), § 77.26(d). The certificate of accuracy and the certificate of calibration may then be admitted into evidence. Section 1547(c)(1) expressly states that *these certificates showing that a device was calibrated and tested for accuracy and that the device was accurate "shall be presumptive evidence of those facts"* in any proceeding charging a person with driving under the influence. Clearly, the certificate of calibration, when offered into evidence with a certificate of accuracy, shall be presumptive evidence only of the completion of the proper testing for accuracy of the breath test equipment.

The term "accuracy" as used in § 1547(c)(1) has a very specific meaning under the statute. In *Commonwealth v. Mongiovi,* 360 Pa.Super. 590, 521 A.2d 429 (1987), the defendant was found guilty of driving a motor vehicle with a blood alcohol count of .10% or greater in violation of 75 Pa.C.S.A. § 3731(a)(4). On appeal, the defendant argued that because the accuracy range on the breathalyzer equipment was found to be .006%, introduction of the test results was in error because the jury would have to speculate as to the fact of his actual blood alcohol level. The trial court in *Mongiovi* had instructed the jury that the weight to be accorded the test results rested with them. In deciding that the jury properly considered the test results, this court discussed the meaning of the term "accurate" as it relates to the equipment used for testing,

It should be pointed out that the term 'variance' could imply a test result which would be to appellant's detriment as well as his advantage. Because we lack a legal presumption as to how a variance should be considered, its weight must be left with the trier of fact. By virtue of the fact that the variance was called into question by a juror, it is clear that the jury had before it the fact of the variance of the breathalyzer equipment. The jury was then able to consider this element, along with the other evidence, in reaching its verdict.

Furthermore, under 67 Pa.Code § 77.25(a), with regard to inspections for accuracy of breathalyzer equipment, the regulations require an inspection within 30 days prior to using the breath test equipment. The record reveals that such a test was made only four days prior to the incident in question, on September 24, 1985, and again 23 days following the incident, on October 21, 1985. The machine was found to be accurate at those times, according to the testimony of the officer who conducted the test. *It must be noted that 'accurate' is a relative term with respect to this type of equipment.* The equipment is accurate if the average deviation does not exceed .005, 67 Pa.Code § 77.25(b)(2)(ii).

Both parties, as well as the trial court, make reference to a range of .006. The testimony reveals that the breath test equipment was tested for accuracy and the following five results were obtained: .095, .099, .099, .101 and .101. On the record, counsel for appellant calculates the .006 range by subtracting the lowest number from the highest. While we do not dispute counsel's calculations, we cannot agree with that formula used by counsel for arriving at the average deviation.

360 Pa.Superior Ct. at 594–595, 521 A.2d at 431–432 (emphasis added). It is based on this analysis that the *Mongiovi* court found the reading of .102% a reliable test result for consideration by the jury.

■ The certificate of accuracy for a particular device simply means that the device was properly tested and that during testing it had delivered an accurate reading as determined by a set average deviation range. Therefore these certificates did not provide presumptive evidence to the jury on the accuracy of blood test results in question but rather were presumptive evidence only of the accuracy of the testing equipment. Where evidence is presented to show that the Intoxilyzer equipment has been properly tested for accuracy and has been calibrated, there is a permissible inference that the test results are reliable.

In this case, the trial court instructed the jury that the Defendant was presumed innocent, the Commonwealth had the burden of proving beyond a reasonable doubt every element of the crime charged and to weigh the credibility of witnesses. The court also informed the jury that the opinion of Dr. Frajola, appellant's expert witness, regarding appellant's blood alcohol content at the time that he was stopped was of low quality since it was not based upon the doctor's own personal knowledge, but given in response to a hypothetical question. The rest of the doctor's opinion was to be given the weight and credibility warranted by the jury. The trial court then explained to the jury that the certificates of calibration and accuracy "shall be presumed as presumptive evidence of the accuracy of the breath test results." This charge goes beyond section 1547(c)(1) in that

it instructs the jury to "presume" the accuracy of the test results, not the accuracy of the equipment. By instructing the jury to "presume" the accuracy of the test results, without any qualification, the trial court, in effect, utilized a pre-*Difrancesco* jury instruction which may have compelled the jury to find appellant guilty without considering the other evidence presented.

We must be very careful to examine jury instructions whenever the trial court decides to charge a presumption. Intoxilyzer results may always be attacked by the defendant. Defendant can present evidence supporting sobriety and the chemical testing procedures can be cross-examined for flaws.[7] We believe that the jury should have been instructed that if they believed that the test results were reliable, they could draw reasonable inferences from the results of the Intoxilyzer test, but they should be cautioned that the test is only evidence of appellant's intoxication and the test result does not require such a finding. Though the trial court further instructed that the Commonwealth has to establish every element of the crime beyond a reasonable doubt and that appellant is presumed innocent, this was not sufficient to cure the prejudice created by the presumption charge. The standard is what a reasonable juror could have understood the charge to mean, not what he was likely to understand. The instruction could have led a reasonable juror to believe that a finding that defendant was under the influence was mandatory. Therefore, we conclude that the trial court improperly instructed the jury with respect to the Certificates of Accuracy and Calibration.

Judgment of sentence vacated and case remanded for a new trial consistent with this decision.

---

7. *See generally,* Lawrence Taylor, *Drunk Driving Defense* 34–48 (3rd ed.1991).