## Commonwealth v. Farrell

C.P. of Monroe County, no. 759 Criminal 1994.

*Wieslaw Niemoczynski,* assistant district attorney, for Commonwealth.

*Mark S. Love,* for defendant.

VICAN, *P.J.,* June 20, 1995—On May 21, 1994, defendant was arrested and charged with driving under the influence of alcohol, 75 Pa.C.S. §3731(a)(1) and (a)(5)(i). On September 28, 1994, defendant waived a preliminary hearing and the charges were held for court. On January 23, 1995, defendant filed an omnibus pretrial motion seeking suppression of breath test results on the grounds that the breathalyzer machine at issue was not operated in compliance with regulations. Following a hearing on defendant's motion, this court issued an opinion and order on March 10, 1995 denying defendant's motion to suppress breath test results.

On May 8, 1995, the Commonwealth filed a motion in limine to preclude the expert testimony of defense expert witness Joe A. Vinson, Ph.D., Professor of Chemistry. Dr. Vinson's proposed testimony relates to the

scientific unreliability of the blood to breath ratio of 2100:1 used in the Intoxilyzer 5000 breathalyzer device. Defendant filed an answer to the Commonwealth's motion on May 10, 1995. A hearing was held on May 22, 1995, at which time the Commonwealth presented testimony from Donald R. Wilkinson, Ph.D., Professor of Chemistry. The Commonwealth's motion in limine is now before us for disposition.

## DISCUSSION

The sole issue before us is whether defense witness Joe A. Vinson, Ph.D., may testify at trial regarding the range of error inherent in a breathalyzer test. Simply put, the Intoxilyzer 5000 measures blood alcohol content from a breath sample. The machine reads the amount of alcohol in the breath and multiplies that number by 2100 to arrive at the subject's blood alcohol content. The figure 2100 is an assumed constant which reflects an average scientifically determined applicable to the general population.

Although Dr. Vinson did not testify at the hearing, counsel for defendant represented to the court that the doctor's testimony would be consistent with that of Walter Frajola, Ph.D. in *Commonwealth v. Sloan,* 414 Pa. Super. 400, 607 A.2d 285 (1992). In *Sloan,* Dr. Frajola took issue with the 2100:1 partition ratio. He testified that, in the general population, the ratio of alcohol in the breath to alcohol in the blood can vary from a low of 1142:1 to a high of 3487:1. *Id.* at 403, 607 A.2d at 287.

Donald R. Wilkinson, Ph.D., Professor of Chemistry, testified at the hearing for the Commonwealth. He is familiar with the Intoxilyzer 5000 and conducts tests on breathalyzer machines. According to Dr. Wilkinson, the partition ratio of 2100:1 assumes ideal testing cir-

cumstances under laboratory conditions. In his opinion, a more accurate ratio is 2300 or 2400:1. Dr. Wilkinson testified that most, if not all, states employ the 2100:1 ratio. Clearly, the 2100:1 partition ratio is merely an estimate that roughly approximates an average ratio and that is calibrated to give the benefit of the doubt to the subject in most instances.

After carefully reviewing the legal issue presented, we find that questions pertaining to the scientific reliability of breathalyzer machines are outside the purview of this court. The breathalyzer machine is approved for use for police officers pursuant to legislative enactment. An attack on the scientific foundation of such equipment is better addressed to the state agencies which approve use of the breathalyzer device.

The regulations pertaining to breath test equipment were promulgated pursuant to the legislative mandate of 75 Pa.C.S. §1547(c)(1), which provides in pertinent part, "chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation."

Inasmuch as the legislature has mandated that these regulations be promulgated, we consider them to have been adopted pursuant to the agency's legislative rulemaking power. See *Bureau of Traffic Safety v. Slater,* 75 Pa. Commw. 310, 462 A.2d 870 (1983) (regulations promulgated pursuant to the agency's legislative rulemaking power under an express grant of legislative power). 28 Pa.Code §5.104 mandates that pre-arrest breath test equipment must meet the approval requirements of the Department of Health. 77 Pa.Code §§77.24, 77.25 and 77.26 outline the procedures employed in using the breath test equipment, provide for accuracy inspection tests of equipment and for annual calibration of equipment respectively.

The offense of driving under the influence of alcohol is defined as driving, operating or being in actual physical control of the movement of any vehicle "if the amount of alcohol by weight in the blood of the person is 0.10 percent or greater at the time of a chemical test of a sample of the person's breath, blood or urine." 75 Pa.C.S. §3731(a)(5). 75 Pa.C.S. §1547(c) provides that the amount of alcohol in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine shall be admissible in evidence. Thus, a breath test is a legally recognized method of establishing a subject's blood alcohol content. Although we recognize that any method of measuring a person's blood alcohol content may be inherently problematic and subject to scientific and physiological variables, our legislature selected the breath test as an accepted and reliable method. When a scientific device has been held to be reliable and approved for use by the Departments of Health and Transportation, it is no longer necessary for there to be expert testimony on that issue.

Our review of cases in this area of the law leads us to conclude that we are not alone in precluding expert testimony on the 2100:1 partition ratio. In *State v. Rucker,* 297 A.2d 400 (Del. 1972), the Delaware Supreme Court addressed the issue of possible error in breath testing which might indicate that the defendant's blood alcohol level was below the level proscribed by statute. In rejecting that claim, the court reasoned:

"If there had been evidence that the test was improperly administered, such evidence could cast such doubt on the result as could be considered by the trier of fact in determining whether the statutory requirement had been met. But, as indicated, evidence that the type of tests already approved by the General Assembly when properly conducted are still subject to possible variations

in results is not a matter which is here left to the trier of facts." *Id.* at 402-403.

The breath test receives similar deference in New Jersey. See *State v. Downie,* 569 A.2d 242 (N.J. 1990), *cert. denied,* 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990).

We believe the breathalyzer satisfies legislative and regulatory policy to provide a reliable measure of a subject's blood alcohol content. As attested to by Dr. Wilkinson, the use of 2100:1 partition ratio results in a blood alcohol reading which is 12 to 13 percent lower than the actual alcohol content of a person's blood. Thus, the breath test machine, as a result of its built-in scientific assumption, errs on the low side in a significant number of cases.

Accordingly, we enter the following:

## ORDER

And now, June 20, 1995, the Commonwealth's motion in limine is granted. Defendant is precluded from offering testimony at trial which would challenge the underlying scientific theory and technical application which measures the ratio of alcohol in the breath to alcohol in the blood.