665 A.2d 1269

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert Mark GOMMER, Appellee.

Superior Court of Pennsylvania.

Argued April 20, 1995.

Filed Oct. 5, 1995.

572

Iva C. Dougherty, Assistant District Attorney, Reading, for Commonwealth, appellant.

Peter D. Maynard, Reading, for appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

WIEAND, Judge:

Robert Mark Gommer was arrested and subsequently bound over for court on charges of driving while under the influence of alcohol,[1] moving from one traffic lane to another without giving an appropriate signal,[2] careless driving[3] and reckless driving.[4] Gommer filed a motion to suppress evidence on grounds that he had been illegally arrested by a member of the Pennsylvania State Police, who was off duty and out of uniform at the time of the purported arrest, and, therefore, without legal authority to make an arrest. The trial court agreed and ordered all evidence obtained as a result of Gommer's arrest to be suppressed. The Commonwealth has appealed from this ruling.[5] After careful review, we reverse.

In reviewing the ruling of a suppression court, "[a]n appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom." *Commonwealth v. Nester*, 443 Pa.Super. 156, 160, 661 A.2d 3, 4 (1995), citing *Commonwealth v. Oglialoro*, 377 Pa.Super. 317, 318, 547 A.2d 387, 387 (1988), *aff'd*, 525 Pa. 250, 579 A.2d 1288 (1990). This Court's "scope of appellate review is limited primarily to questions of law." *Commonwealth v. Stine*, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988), citing *Commonwealth v. White*, 358 Pa.Super. 120,

1. 75 Pa.C.S. § 3731(a)(1).

2. 75 Pa.C.S. § 3334(a).

3. 75 Pa.C.S. § 3714.

4. 75 Pa.C.S. § 3736.

5. The Commonwealth has included in its notice of appeal a certification that the suppression order will terminate or substantially handicap its prosecution of Gommer. This appeal, therefore, is proper. See: *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

123, 516 A.2d 1211, 1212 (1986). " 'If the evidence supports the [suppression] court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.' " *Commonwealth v. Robinson*, 438 Pa.Super. 119, 123, 651 A.2d 1121, 1123 (1994), quoting *Commonwealth v. Smith*, 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990).

Instantly, the trial court's factual findings were based upon stipulations of counsel and may be summarized as follows. On August 18, 1993, at or about 11:10 p.m., Corporal Lisa Damore of the Pennsylvania State Police, who was off duty and not in uniform at the time, observed appellee operating a maroon Nissan Maxima automobile in a reckless manner in the City of Reading, Berks County. Appellee made a wide left turn from Kenhurst Boulevard onto Lancaster Avenue and then began swerving back and forth between the left and right lanes for northbound traffic. At one point, as he continued changing lanes, appellee was forced to swerve his vehicle to avoid striking two pedestrians standing beside a parked vehicle. He then drove onto the center line of the highway, forcing Corporal Damore to swerve her vehicle to avoid colliding with him. Thereafter, appellee drove into the drive-thru line at a Mc-Donald's restaurant on Lancaster Avenue. When he subsequently pulled away from the drive-thru window, Corporal Damore signaled for appellee to pull over. Damore, who had already called State Police headquarters to request assistance, identified herself to appellee and asked him to await the arrival of other troopers to the scene. She informed appellee that she believed him to be driving under the influence, and, then, took possession of the keys of appellee's vehicle.

Troopers Smith and Wenger were dispatched to the Mc-Donald's parking lot where appellee's vehicle had been stopped. Upon their arrival, Smith and Wenger were informed by Corporal Damore about her observations of appellee's erratic driving. Trooper Wenger requested appellee to produce his driver's license and registration card, but appellee was unable to find them. He initially refused a command to exit his vehicle, and, when he ultimately complied and got out of his vehicle, he exhibited a strong odor of alcohol. His eyes

were bloodshot, and his speech was slurred. He experienced difficulty standing, walked with a staggering gait and had to lean against a wall for support. Appellee continued to be uncooperative with police, refusing to identify himself or to perform field sobriety tests. He was transported to a hospital, but there he refused to submit to blood alcohol testing after being informed of his rights under the implied consent law. Upon refusal, appellee was taken to district court for arraignment.

In suppressing all evidence obtained after the stop of appellee's vehicle, the suppression court reasoned that Corporal Damore by stopping appellee's vehicle and taking his car keys had, in fact, placed appellee under arrest. The court concluded that, because Damore was off duty and out of uniform, she was not acting within the scope of her employment as a police officer and, thus, lacked legal authority to make an arrest. The Commonwealth argues, however, that the trial court erred by determining that Corporal Damore had arrested appellee. Instead, it asserts, Damore had made an investigative traffic stop of appellee's vehicle and had merely detained him until the other troopers arrived to conduct further investigation. Furthermore, the Commonwealth urges, the subsequent arrest of appellee by Troopers Smith and Wenger was supported by probable cause, based upon information obtained independently of Corporal Damore's stopping of appellee's vehicle.

■ Section 6304 of the Vehicle Code provides, in pertinent part, as follows:

§ 6304. **Authority to arrest without warrant**

(a) **Pennsylvania State Police.**—A member of the Pennsylvania State Police who is in uniform may arrest without a warrant any person who violates any provision of this title in the presence of the police officer making the arrest.

. . . .

(c) **Other powers preserved.**—The powers of arrest conferred by this section are in addition to any other powers of arrest conferred by law.

75 Pa.C.S. § 6304(a) and (c). The effect of subsection (c) of this statute is to incorporate by reference into the Vehicle Code other "existing statutes which bestow[ ] powers of arrest upon police officers." *Commonwealth v. Neufer,* 264 Pa.Super. 553, 558, 400 A.2d 596, 599 (1979). See also: *Commonwealth v. Streater,* 422 Pa.Super. 502, 619 A.2d 1070 (1993) (en banc). Section 6308(b) of the Vehicle Code provides that:

> **(b) Authority of police officer.**—Whenever a police officer ... has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). With respect to arrests for drunk driving, the Vehicle Code specifically states:

> **(c) Certain arrests authorized.**—In addition to any other powers of arrest, a police officer is hereby authorized to arrest without a warrant any person who the officer has probable cause to believe has violated the provisions of this section, regardless of whether the alleged violation was committed in the presence of such officer. This authority to arrest extends to any hospital or other medical treatment facility located beyond the territorial limits of the police officer's political subdivision at which the person to be arrested is found or was taken or removed to for purposes of emergency treatment examination or evaluation provided there is probable cause to believe that the violation of this section occurred within the police officer's political subdivision.

75 Pa.C.S. § 3731(c).

The authority of members of the State Police to make warrantless arrests is delineated in section 712(a) of the Administrative Code, which provides:

The various members of the Pennsylvania State Police are hereby authorized and empowered:

(a) To make arrests, without warrant, for all violations of the law, including laws regulating the use of the highways, which they may witness, and to serve and execute warrants issued by the proper local authorities. They shall have all the powers and prerogatives conferred by law upon members of the police force of cities of the first class, and upon constables of the Commonwealth.

Act of April 9, 1929, P.L. 177, art. VII, § 712(a), as amended, 71 P.S. § 252(a). Additionally, the Act of June 4, 1897, P.L. 121, § 1, 13 P.S. § 45, which defines the arrest powers of constables, confers upon the State Police the power to:

in addition to the powers already conferred upon them, ... without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or [who] may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens....

13 P.S. § 45.

Upon careful reading of the statutes, we find no explicit limitation of the authority of a state police officer to make a traffic stop or arrest only when the officer is on duty and/or in uniform. In *Commonwealth v. Hurst*, 367 Pa.Super. 214, 532 A.2d 865 (1987), the Superior Court rejected a claim that a traffic citation, issued by an off duty state trooper, was invalid because the trooper was not acting within the scope of his employment at the time of the defendant's commission of the offense of reckless driving.[6] With respect to the actions of an off duty police officer, the *Hurst* Court observed as follows:

In *Commonwealth v. Eshelman*, 477 Pa. 93, 383 A.2d 838 (1978), our Supreme Court considered the validity of certain actions taken by an off-duty police officer. In that case, an off-duty policeman was running his dogs across the appel-

6. The Rules of Criminal Procedure define a police officer as "any person who is by law given the power to arrest when acting within the scope of the person's employment." Pa.R.Crim.P. 3(n).

lant's grandmother's property without permission. Near the edge of a wooded area the officer noticed an old automobile. He peered through its windows and observed what he suspected to be packages of marijuana being dried. The officer reached inside of the car, extracted one of the unopened packages, and took it to the police station. The parcel was opened and its contents examined; the package indeed contained marijuana. Based on this discovery, a warrant was obtained to search the automobile. During a suppression hearing, it was determined that the off-duty policeman was not acting under the direction of any sovereign or police authority. Therefore, the officer's actions did not constitute an unlawful search and seizure conducted under unlawful authority. The suppression hearing judge held that the officer's search and seizure might have been characterized as a civil trespass by a private citizen. *Id.* at 383 A.2d at 839–840.

Our Supreme Court disagreed and found that the officer, despite being off-duty, was "acting as a police officer when he removed the package and turned it over to the police." Further, it was held that the policeman's conduct was totally inconsistent with the theory that he was merely a private citizen. *Id.* at 383 A.2d at 842. Thus, our Supreme Court refused to analyze the supression [sic] issues from the perspective that the search and seizure was performed by a private citizen. *See People v. Martin,* 225 Cal.App.2d 91, 36 Cal.Rptr. 924 (1964) ("police officers outside their jurisdiction, though technically private citizens, regarded as agents of the state on the basis of their conduct"). *See also State v. Brothers,* 4 Or.App. 253, 478 P.2d 442 (1970) ("off-duty police chief who came to home as ambulance operator, returned later that night to search, held a police officer at time of search"). *Id.* at 383 A.2d at 842.

Although the facts in *Eshelman* dealt with suppression issues, we find its holding to be applicable to the case at bar. Presently, Appellant was directed to stop his rig along an interstate highway, which was within the trooper's jurisdiction while on-duty. The record reflects that Trooper Mory

was in uniform, with the exceptions of his tie, hat, and service revolver. Likewise, it is undisputed that the trooper conducted himself in an official manner while interviewing Appellant. Later, after speaking to his superior about this occurrence, the officer chose to file a citation with the district magistrate's office himself, rather than transfer the case to another officer based on information received.

We find from these facts that Trooper Mory was acting as a police officer, not as a private citizen, when he stopped Appellant's tractor trailer. Despite Appellant's position to the contrary, the fact that the officer was off-duty does not mean that the trooper's power to conduct official police business automatically ceased. The circumstances attendant to Appellant's delay clearly illustrate that the safeguards which attach to a driver being pulled over by an on-duty police officer were present at all times. Therefore, we disagree with Appellant's contention that the issued citation was null.

*Id.* at 220–221, 532 A.2d at 868–869. But cf. *Commonwealth v. Price,* 406 Pa.Super. 166, 593 A.2d 1288 (1991), *allocatur granted,* 529 Pa. 663, 604 A.2d 1030 (1992) (F.B.I. agent had no legal authority to stop vehicle for suspected Vehicle Code violation and to make arrest for driving under the influence).

 In the instant case, Corporal Damore, even though off duty, was not without power to conduct official police business. Upon observing appellee driving in an erratic and dangerous manner, Damore possessed at least a reasonable, articulable basis for stopping appellee's vehicle. See: *Commonwealth v. Hamme,* 400 Pa.Super. 537, 540, 583 A.2d 1245, 1247 (1990) ("[E]rratic driving provides a sufficient, reasonable basis to support an investigatory stop."). Indeed, the Superior Court has observed that the "[o]bservation of erratic driving has been recognized as providing the basis for probable cause to arrest for reckless driving." *Commonwealth v. Lymph,* 372 Pa.Super. 97, 100–101, 538 A.2d 1368, 1370 (1988), citing *Commonwealth v. Barkley,* 234 Pa.Super. 503, 341 A.2d 192 (1975) and *Commonwealth v. Mathious,* 237 Pa.Super. 522, 352 A.2d 172 (1975). Moreover, upon signaling for appel-

lee to pull over, Damore identified herself as a member of the State Police; instructed appellee to remain at the scene until other troopers arrived; informed appellee of the basis for the stop—Damore's belief that he was driving under the influence; and took possession of appellee's car keys to ensure that he would not drive away. Under these circumstances, even though Corporal Damore was off duty and not in uniform, she conducted herself in an official manner and was acting as a police officer when she pulled over appellee's vehicle. Therefore, we conclude that Corporal Damore was acting within the scope of her employment as a member of the State Police when she stopped appellee's vehicle for suspicion of drunk driving. Further, because Damore had a legal basis to stop appellee's vehicle, there was no violation of his constitutional rights.

■ In addition, it seems clear that Corporal Damore's actions in stopping appellee's vehicle did not rise to the level of an arrest, as found by the suppression court, but, rather, were in the nature of a brief investigative detention. In this regard, the Pennsylvania Supreme Court has recently observed:

[W]e note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99

S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992).

*Commonwealth v. Ellis,* 541 Pa. 285, 294, 662 A.2d 1043, 1047 (1995) (footnote omitted). The Superior Court has observed further that:

> [T]raffic stops, like *Terry* stops, constitute **investigative** rather than **custodial** detentions, unless under the totality of circumstances the conditions and duration of the detention become the functional equivalent of an arrest.
>
> . . . .
>
> Among the factors generally considered in determining whether a detention is investigative or custodial are: the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat, or use of force; and, the investigative methods used to confirm or dispel suspicions. *See generally 3 LaFave, Search and Seizure, supra;* LaFave, *Classifying Detentions, supra;* McGinley, *Characterizing Police Encounters, supra.*

*Commonwealth v. Douglass,* 372 Pa.Super. 227, 244–245, 539 A.2d 412, 421 (1988) (plurality opinion). See also: *Commonwealth v. Ellis,* 379 Pa.Super. 337, 353–357, 549 A.2d 1323, 1331–1332 (1988).

Corporal Damore observed appellee driving in an erratic and dangerous manner and suspected that he was driving under the influence of alcohol. Damore then stopped appellee's vehicle and briefly detained him until the arrival of on duty state troopers who would be properly equipped to investigate and determine whether appellee was, in fact, intoxicated and, if necessary, to take him into custody. Damore did not attempt to interrogate appellee, she did not threaten or use force, but did take possession of his car keys. Under these circumstances, we hold that Corporal Damore's detention of appellee was not sufficiently coercive to rise to the level of a

custodial detention or arrest. Therefore, we agree with the Commonwealth's contention that appellee was not actually arrested until after Troopers Smith and Wenger arrived on the scene, were informed by Corporal Damore of appellee's erratic driving and observed appellee exhibit objective signs of intoxication. In similar situations involving arrests for drunk driving, "officers who have not witnessed first-hand erratic driving or accidents, but have received information from other officers or citizen witnesses and later personally observed the accused, were held to have sufficient probable cause to make an arrest." *Commonwealth v. Hamme, supra* at 540–541, 583 A.2d at 1247, citing *Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932 (1976); *Commonwealth v. Guerry,* 469 Pa. 20, 364 A.2d 700 (1976); 75 Pa.C.S. § 3731(c). Cf. *Commonwealth v. Galloway,* 525 Pa. 12, 19–20, 574 A.2d 1045, 1048–1049 (1990) (plurality opinion).

Having concluded that Corporal Damore had the legal authority to stop appellee's vehicle pursuant to her reasonable suspicion that he was driving under the influence of alcohol, and that Troopers Smith and Wenger subsequently made a lawful arrest of appellee based upon information provided by Corporal Damore and their own observations of appellee's conduct, we hold that the trial court erred when it suppressed all evidence obtained as a result of appellee's arrest. The order suppressing evidence, therefore, must be reversed.

Order reversed and case remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is not retained.