**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Gregory Philip KENDALL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 28, 2000.

Filed Feb. 16, 2001.

Carol A. Redding and Patrick J. Redding, Chambersburg, for appellant.

Angela R. Krom, Asst. Dist. Atty., Chambersburg, for the Com., appellee.

Before HUDOCK, STEVENS and MUSMANNO, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence imposed upon Appellant after he was convicted of driving under the influence of alcohol.[1] He was sentenced to a

---

1. 75 Pa.C.S.A. § 3731.

term of thirty days to twenty-three months of incarceration. This appeal followed, in which the sole issue raised by Appellant is whether the trial court erred in denying his suppression motion. We affirm.

¶ 2 When "reviewing the ruling of a suppression court, an appellate court must first ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions" drawn from such findings. *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1270 (1995) (quotation marks and citation omitted). "When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Marinelli*, 547 Pa. 294, 315–16, 690 A.2d 203, 214 (1997), *cert. den.*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998) (citation omitted). "With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this [C]ourt." *Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (citations omitted). Moreover, we are bound by those findings that are supported by the record and may only reverse if the legal conclusions drawn therefrom are in error. *Gommer*, 665 A.2d at 1270.

¶ 3 With regard to the suppression motion, the Commonwealth presented the testimony of two police officers, and Appellant testified on his own behalf. Although not labeled as such, the trial court made the following factual findings based upon this testimony:

On July 3, 1998, a DUI checkpoint was set up in the northbound lane of Route 11 south of Chambersburg in Franklin County, Pennsylvania, between 11:00 p.m. and midnight. In that area, Route 11 consists of two lanes, one in each direction, and a turning lane in the middle. A warning sign was set up approximately 100 to 150 yards before the checkpoint and the lane of travel leading into the checkpoint was marked by cones and flares. All traffic was stopped at the checkpoint.

At approximately 11:45 p.m., [Appellant] approached the checkpoint and entered the turning lane between the cones before reaching the checkpoint. He testified that he did so to make a left turn into the development where he lived. However, Officer Culbertson, one of the officers manning the checkpoint, testified that the turn into the development was approximately 150 feet *past* the checkpoint. This testimony was not challenged by [Appellant]. Officer Perkins saw [Appellant's] car in the turning lane and directed [Appellant] back into the lane of traffic going through the checkpoint. [Appellant] complied and went through the checkpoint. Officer Perkins noticed a strong odor of alcohol when [Appellant] opened his window and observed an open can of beer in the car. [Appellant] was then directed into the detainment area where a field sobriety test was conducted. Subsequently, a blood test was performed and [Appellant] was charged with driving under the influence.

Trial Court Opinion, 3/9/99, at 1. The record supports the suppression court's factual findings. Thus, we shall now consider whether, given these findings, the suppression court properly denied Appellant's suppression motion.

¶ 4 The essence of Appellant's claim on appeal is that the only reason he was stopped was because he tried to avoid the checkpoint. He argues that, because his actions in avoiding the checkpoint, stand-

ing alone, do not constitute reasonable suspicion to stop him, *Commonwealth v. Scavello*, 557 Pa. 429, 734 A.2d 386 (1999), the evidence obtained as a result of the stop should have been suppressed. While Appellant correctly notes the holding in *Scavello*, we find the *Scavello* rationale to be inapplicable to the factual circumstances of the present case.

¶ 5 The issue addressed by our Supreme Court in *Scavello* was "whether a motorist may be stopped for an investigatory detention merely because he has acted so as to avoid a roadblock." *Id.* at 432, 734 A.2d at 387. In that case, the defendant made a legal U-turn before he got to the roadblock set up "as part of a program to interdict drunk drivers." *Id.* at 431, 734 A.2d at 386. One of the police officers assigned to the roadblock pursued the defendant and made a traffic stop. During the traffic stop, the officer detected the smell of alcohol and, thereafter, the defendant was arrested for drunk driving. The suppression court denied the defendant's suppression motion and the defendant was later convicted of driving under the influence of alcohol. This Court reversed, holding that "a motorist's avoidance or attempt to avoid a police roadblock must be coupled with other articulable facts in order to give a police officer reasonable suspicion that the motorist is in violation of the Vehicle Code or that criminal activity is afoot." *Commonwealth v. Scavello*, 703 A.2d 36, 38 (Pa.Super.1997) (quoting *Commonwealth v. Metz*, 412 Pa.Super. 100, 602 A.2d 1328, 1335 (1992).) Because the facts revealed that the defendant was pulled over merely because he appeared to be attempting to avoid a roadblock, and avoidance in and of itself did not give rise to reasonable suspicion, this Court held that the stop was illegal. Thus, this Court concluded that the denial of the defendant's suppression motion was in error, vacated the defendant's judgment of sentence, and remanded the case for a new trial.

¶ 6 The Commonwealth appealed from our disposition. Before our Supreme Court, it argued that this Court erred for two reasons. First, the Commonwealth contended that because the officer who effectuated the traffic stop was part of the effort to stop cars at the roadblock, this activity alone provided the requisite authority for the stop. In rejecting this claim, the high court reasoned:

> Being engaged in a systematic program of checking vehicles is something that occurs at the roadblock; it does not occur at some other location distant from the roadblock, for at that location there is no systematic program of checking. If a stop is to be made at a location away from the roadblock, the officer may stop a vehicle, as provided for in [75 Pa.C.S.A. § 6308(b)], only if he has "reasonable grounds to suspect a violation of this title."

*Scavello*, 557 Pa. at 433, 734 A.2d at 387. In its second argument on appeal, the Commonwealth contended that the defendant's avoidance of the roadblock was itself sufficient justification for the traffic stop. Our Supreme Court disagreed. The high court reasoned that, while there is statutory authority for the police to conduct roadblocks, and the Court had not yet ruled the practice unconstitutional, "there is no requirement that a driver go through a roadblock. Failing to go through the roadblock in and of itself, therefore, provides no basis for police intervention." *Id.* at 433, 734 A.2d at 388 (footnote omitted). Rather, our Supreme Court agreed with the holding of this Court that "if police should observe a violation of the Motor Vehicle Code [sic] or have a reasonable suspicion that the vehicle which is avoiding the roadblock is involved in criminal conduct, such observation or suspicion, which can be articulated with particularity, would be the basis for a vehicle stop." *Scavello*, 557 Pa. at 433–34, 734 A.2d at 388.

 ¶ 7 In the present case, the issue arises as to whether an actual traffic stop, i.e., an investigatory detention, *see id.*, was effectuated prior to Appellant's entering

the checkpoint. Given the above facts, the suppression court concluded as follows:

> It is undisputed that [Appellant] lived in the development located on the left side of Route 11 near the checkpoint and that the turn from the center lane was a legal turn. However, contrary to [Appellant's] statement in his brief, the point where [he] had to turn was located *beyond* the checkpoint. Under the case law as stated above, a motorist is permitted to avoid a checkpoint by legally turning before getting to the checkpoint. However, this court believes that a motorist is not allowed to *bypass* the checkpoint by driving past it in the center lane and making a turn at a location beyond the checkpoint. Rather, since [Appellant] had to turn into a street which was situated beyond the checkpoint, he had to pass through the checkpoint, just like any other motorist. The police were systematically stopping every vehicle in the northbound lane of Route 11. [Appellant] was not stopped merely because he attempted to avoid the checkpoint but because he could not drive past the checkpoint without going through it. Thus, the police were justified in stopping [Appellant] and directing him back into the checkpoint. At the time of this legal stop, Officer Perkins detected an odor of alcohol and an open beer can and then had reasonable suspicion to further detain [Appellant] for a field sobriety test. This court thus finds that the stop was not illegal and that the evidence resulting from it does not need to be suppressed.

Trial Court Opinion, 3/9/99, at 3–4. We agree. The facts of record do not indicate that an investigatory detention of Appellant's vehicle occurred in the center lane. Rather, the record establishes that Appellant was merely "stopped," in the sense that he was prevented from driving farther in the center lane, and was then directed to re-enter the northbound lane that went through the checkpoint.

¶ 8 Appellant attempts to argue that a traffic stop occurred in the center lane of the highway by reference to several documents prepared at or near the time of the police encounter. More specifically, Appellant relies upon the DUI investigation field notes and the pre-arrest screening form which note that he was "stopped" in the center lane to support his claim that an investigatory detention was effectuated merely because he tried to avoid the checkpoint. A close review of the record, however, refutes this assertion.

¶ 9 The officer who had first interacted with Appellant's vehicle did not prepare either form. Rather, that officer's testimony at the suppression hearing revealed that, as Appellant moved between the cones and into the center lane, the officer did no more than wave Appellant's vehicle back into the northbound lane, by using hand signals and his flashlight, and Appellant complied. Specifically, Officer Lloyd Perkins testified that he "didn't stop [Appellant's] vehicle in the center lane. I just motioned him back into the line of traffic." N.T., 1/26/99, at 14. Officer Keith Culbertson, who had interacted with Appellant and his vehicle only in the detainment area, prepared the field notes. He stated that he had written Appellant's vehicle "[w]ent down the center lane to avoid the checkpoint" and that the vehicle was "stopped" in the center lane based upon "the information that [he] was given at the time." *Id.* at 26. Officer Culbertson then noted that he did not prepare the pre-arrest screening form and that, at any rate, Appellant's vehicle would have been "stopped" in the center lane due to the safety of the officers who were conducting the checkpoint. N.T., 1/26/99, at 27–28. As noted above, it is the sole province of the suppression court to weigh the credibility of the witnesses, and it is entitled to believe all, part or none of the evidence presented. Given the above facts, as found by the suppression court, a traffic stop, *i.e.*, an investigatory detention, did not occur in this case until Appellant went through the checkpoint. At that time, the

police officer smelled a strong odor of alcohol and observed an open container of beer. As these circumstances created a reasonable suspicion that Appellant was driving drunk, thus warranting further investigation, the suppression court's denial of Appellant's suppression motion was proper.

¶ 10 Judgment of sentence affirmed.