**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert Earl SWARTZ, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 5, 2001.
Filed Dec. 4, 2001.

tions would have aided the PCRA court's re-          view.

Michael R. Hadley, Oil City, for appellant.

James P. Carbone, Assistant District Attorney, Franklin, for Com., appellee.

Before DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO and ORIE MELVIN, JJ.

DEL SOLE, President Judge.

¶ 1 This is an appeal from the judgment of sentence of two to twenty-four months, less one day, of incarceration imposed upon Appellant after he was convicted, at a non-jury trial, of driving under the influ-

ence of alcohol.[1] A divided panel of this Court filed a memorandum opinion on March 27, 2001, ruling that the suppression court erred in upholding the legality of the stop and in refusing to suppress the resulting evidence. On April 10, 2001, the Commonwealth filed an application for reargument *en banc*. This Court granted the Commonwealth's application on June 8, 2001, and withdrew the panel memorandum opinion. Upon *en banc* review we have examined Appellant's challenge to the denial of his motion to suppress physical evidence. We conclude that his claim has merit and we vacate Appellant's judgment of sentence and remand for further proceedings.

¶ 2 An appellate court reviewing the ruling of a suppression court must first ascertain whether the record supports the suppression court's factual findings and then determine the reasonableness of the inferences and legal conclusions drawn from such findings. *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1270 (1995). "When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Queen*, 536 Pa. 315, 639 A.2d 443, 445 (1994) (citation omitted). "With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings.

Only factual findings which are supported by the record are binding upon this [C]ourt." *Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (citations omitted). Moreover, we are bound by those findings that are supported by the record and may only reverse if the legal conclusions drawn therefrom are in error. *Gommer*, 665 A.2d at 1270.

¶ 3 With regard to the suppression motion, the Commonwealth presented the testimony of Trooper Craig Amos of the Pennsylvania State Police. Although not labeled as such, the trial court made the following factual findings based upon his testimony:

> On May 16, 1998, Trooper Amos of the Pennsylvania State Police received a dispatch at 4:24 p.m. The dispatch indicated that a citizen called the State Police to inform them that a blue Ford Escort, with a registration plate BLJ–6698, was being driven in Seneca by an intoxicated individual heading towards Franklin. Trooper Amos did not know the name of the individual who called the Barracks [sic]. Trooper Amos headed towards Franklin in his vehicle and did not find [the blue Ford Escort]. At approximately 5:48 p.m., Trooper Amos spotted the Blue [sic] Ford Escort at the intersection of State Routes 57 and 62, a direction completely opposite from Franklin. Trooper Amos stopped the vehicle solely on the information he received from the 4:24 p.m. dispatch. Trooper Amos did not observe any violations of the Vehicle Code prior to pulling the vehicle over.

Trial Court Opinion, 1/29/99, at 1. The record supports the suppression court's factual findings.[2] Given these findings, the

---

1. 75 Pa.C.S.A. § 3731. Appellant was also found guilty of the summary offense of driving without a seatbelt. 75 Pa.C.S.A. § 4581(a)(2). He was found not guilty of the summary of-

fense of careless driving. 75 Pa.C.S.A. § 3714.

2. Although not stated in the above factual findings, Trooper Amos testified that he con-

suppression court concluded that "the information received on the dispatch gave Trooper Amos reasonable suspicion to warrant the vehicle stop at bar." *Id.* at 2. We cannot agree.

■■■ ¶ 4 As this Court has summarized:

It is well established "when the police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants are considered 'seized' and this seizure is subject to constitutional constraints." *Commonwealth v. Knotts,* 444 Pa.Super. 60, 64, 663 A.2d 216, 218 (1995). An investigatory stop of an automobile is justified only when it is based upon objective facts creating a reasonable suspicion the vehicle's occupants are presently involved in criminal activity. *Commonwealth v. Valenzuela,* 408 Pa.Super. 399, 408, 597 A.2d 93, 98 (1991). To meet this standard, the officer must point to specific articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. *Commonwealth v. Williams,* 419 Pa.Super. 380, 385, 615 A.2d 416, 419 (1992), *alloc. denied,* 533 Pa. 651, 624 A.2d 110 (1993).

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. *Commonwealth v. Wright,* 448 Pa.Super. 621, 630, 672 A.2d 826, 830 (1996). Naturally, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Commonwealth v. Ogborne,* 410 Pa.Super. 164, 169, 599 A.2d 656, 659 (1991), *alloc. denied,* 530 Pa. 631, 606 A.2d 901

(1992) (*quoting Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Thus, in *Commonwealth v. Wilson,* 424 Pa.Super. 110, 622 A.2d 293 (1993), *alloc. denied,* 536 Pa. 623, 637 A.2d 283 (1993), we examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and explained:

Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

*Id.,* at 115, 622 A.2d at 295–96 (citations omitted).

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. *See Commonwealth v. Jackson,* 548 Pa. 484, 490, 698 A.2d 571, 573 (1997) (referring to anonymous tip as basis for *Terry* stop and frisk). However, a tip from an informer known to the police may carry enough indicia of reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so. *See id.* (*citing Alabama v. White, supra*). Indeed, "a known informant places himself at risk of prosecution for filing a false

---

firmed that the registration plate of the blue Ford Escort was the same as that given in the original police dispatch. Trooper Amos also

testified that he later learned that the caller was a known police informant.

claim if the tip is untrue, whereas an unknown informant faces no such risk." *Id.*

*Commonwealth v. Lohr,* 715 A.2d 459, 461–462 (Pa.Super.1998) (footnote omitted).

■ ¶ 5 The Commonwealth contends that because the tip in this case was received by a police dispatcher from a known citizen informant based upon that person's personal observation, it alone carried enough indicia of reliability for the police to make an investigative stop of the motor vehicle. The Commonwealth argues the trooper's receipt of this information from the dispatcher, which described the vehicle with sufficient specificity, coupled with the nature of the offense, driving under the influence, created reasonable suspicion warranting the investigatory stop.

¶ 6 Appellant submits that the information provided to the trooper was insufficient to justify an investigatory stop because the trooper was not given the identity of the individual tipster and thus was unable to judge his credibility or reliability. Appellant notes that the trooper made no observations to corroborate the informant's allegations before stopping the vehicle. In support of his position, Appellant also points to the fact that the informant did not provide a description or name of the driver and that Appellant's vehicle was not stopped until one hour and twenty-four minutes after the informant's call.

¶ 7 Upon review of this record we conclude the absence of certain information coupled with the duration of time which passed between the informant's call and the trooper's stop did not enable the trooper to possess reasonable suspicion that this vehicle was being operated by someone under the influence. As noted by Appellant, the informant described the vehicle, not the driver, and the direction the vehicle was traveling. The trooper patrolled in the identified direction, but did not see the described vehicle. Over an hour and twenty minutes later the trooper observed and stopped a blue Ford Escort traveling at a location completely opposite from the direction given in the police dispatch. Under these circumstances although the car may have been the one observed by the informant, it was not reasonable for the trooper to presume that it was being operated by the same individual who was reported to be under the influence. A significant amount of time had passed, making the report stale, and the fact that the vehicle was traveling in the opposite direction from that reported, made the rational inference that the driver was the one described as intoxicated even less likely. Thus, irrespective of the informant's status as a "known" or "unknown" source to the trooper, given the length of time which passed between the information provided by the informant and the stop, the fact the vehicle was traveling in the opposite direction from that described and the absence of any information from which the trooper could identify the driver, the trooper lacked reasonable suspicion to justify a stop.

¶ 8 These particular facts distinguish this case from *Commonwealth v. Korenkiewicz,* 743 A.2d 958 (Pa.Super.1999) *(en banc), appeal denied,* 563 Pa. 659, 759 A.2d 383 (2000), on which the Commonwealth relies. In *Korenkiewicz,* the night manager of a gas station, after observing suspicious movements of a dark-colored convertible at the station, called 911 relaying to a dispatcher that he " 'had a person in the parking lot that was either ill or intoxicated....' " *Id.* at 960. The night manager again called 911 after the defendant backed his vehicle up once or twice and looked at him in a threatening manner. While the night manager was on the phone this second time, the defendant moved his car toward the exit of the gas station.

¶ 9 A police officer on patrol in the area was dispatched to the gas station for a suspicious vehicle and person complaint. While en route, the police officer received additional information that the operator of the vehicle may be intoxicated and was preparing to leave the station. The police officer testified that, as he approached the gas station, he saw a vehicle matching the description broadcast over the police radio and saw that it was about to pull out of the gas station. The officer pulled behind the vehicle and activated his overhead lights. Upon approaching the vehicle, the police officer noticed that the driver exhibited signs of intoxication to such a degree that he was incapable of safe driving. He therefore placed the driver under arrest. This court found the totality of the circumstances justified the stop of the appellant's vehicle to investigate his condition.

¶ 10 In *Korenkiewicz* the police arrived on the scene and observed the described vehicle before it even exited the parking lot. Similarly in *Commonwealth v. Lohr*, 715 A.2d 459 (Pa.Super.1998), and *Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833 (1987), the police were provided with a tip relayed by radio report and moments later were able to locate the vehicle. In *Lohr* the citizen caller reported that she observed a red and white Ford Bronco being driven erratically into the parking lot of a supermarket. The caller remained on the line with the dispatcher while the officer proceeded to the scene where he observed the appellant operating a red and white Bronco as it began to back out of the parking space. In *Janiak*, the police were informed by two radio communications that a person was driving while under the influence and within minutes the officers saw a vehicle driving on the exact roadway and coming from the exact di-

rection as that reported. In both cases this court ruled that under the circumstances the police officers acted with reasonable suspicion in effectuating the stop.

¶ 11 In this case, the trooper admitted at the suppression hearing that he stopped Appellant's vehicle without first corroborating the report of drunk driving via any personal observation.[3] This fact, taken together with the lapse in time from his receipt of the report and the absence of any description of the driver, leads us to conclude that insufficient evidence of record was offered to support the traffic stop. Thus, the suppression court erred in upholding the legality of the stop in this case and refusing to suppress the evidence derived therefrom.

¶ 12 Judgment of sentence vacated. The matter is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 13 JOYCE, J. files a Concurring Opinion

¶ 14 ORIE MELVIN, J. concurs in the result of the Majority and also joins the Concurring Opinion by JOYCE, J.

¶ 15 STEVENS, J. joins the Majority and the Concurring Opinion by JOYCE, J.

JOYCE, J., concurring.

¶ 1 I agree with the majority that given the duration of time which passed between the informant's call and the vehicle stop; the fact that the informant described the vehicle and not the driver; and the fact that the vehicle was travelling in a direction completely opposite of the direction indicated by the informant, the trooper did not have reasonable suspicion to stop Appellant's vehicle. However, I write separately to note my disagreement with the suggestion that the informant's credibility

---

**3.** Although before stopping Appellant's vehicle, Trooper Amos apparently confirmed the vehicle's registration plate as the same as that given in the original police dispatch, the confirmation of this fact in no way provided additional support for the unjustified stop.

or reliability was lessened by the fact that the trooper who stopped Appellant's vehicle did not know the identity of the informant and was unable to judge the informant's reliability and credibility. As our Court noted in *Commonwealth v. Cullen,* 340 Pa.Super. 233, 489 A.2d 929, 937 (1985), the investigating officer need not have personal knowledge of the facts that support probable cause for an investigative stop. The officer may reasonably rely upon radio transmissions so long as the officer issuing the information has received reasonably trustworthy information sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing an offense. *Id.*

¶ 2 Furthermore, Pennsylvania law permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion. *See Commonwealth v. Janiak,* 368 Pa.Super. 626, 534 A.2d 833 (1987) (allowing police to make stop of individual suspected of intoxication based upon radio information, although police had not personally observed unusual or criminal conduct). Also, the mere fact that the police received their information over the police radio does not, of itself, establish or negate the existence of reasonable suspicion. *Commonwealth v. Korenkiewicz,* 743 A.2d 958, 964 (Pa.Super.1999) *(en banc) citing Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571 (1997).

¶ 3 In the case at bar, it is immaterial whether the trooper knew specific information about the informant's reliability. Police officers routinely rely on, and act on the basis of information received from dispatchers. On their part, dispatchers try to distinguish legitimate reports from hoaxes; they try to distinguish unreliable informants from reliable ones before they send out information to the troopers on the streets. Therefore, as long as the dispatcher has determined the identity and reliability of an informant, it is unnecessary for the trooper on the street to be informed of the identity of the informant making the report. The trooper need not be aware of the credibility or reliability of the informant. The job of a police officer involves acting in emergency situations and in a time-sensitive manner. Police officers on the street cannot effectively perform their duties if they are required to personally verify the identity and reliability of each informant whose report they must investigate.

¶ 4 Accordingly, I concur with the result reached by the majority while maintaining that the informant's reliability was not diminished by the fact that the trooper did not know the identity or reliability of the informant.