J. S10024/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| | : | |
| YAMILE RUIZ, | : | |
| | : | |
| Appellee | : | No. 933 EDA 2016 |

Appeal from the Order February 17, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000829-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 29, 2017**

The Commonwealth appeals from the February 17, 2016 Order entered in the Philadelphia County Court of Common Pleas granting the Motion to Suppress filed by Appellee, Yamile Ruiz. After careful review, we conclude that an officer's testimony that he ran a motorist's tags and "believe[s]" that the results came back "inconclusive" does not provide reasonable suspicion to believe that the motorist has committed a violation of the Motor Vehicle Code so as to support the seizure of evidence subsequently obtained. We, therefore, affirm.

On January 7, 2015, Appellee was arrested and charged with Possession With Intent to Distribute and other related offenses after police officers discovered marijuana in her vehicle following a traffic stop. Appellee filed a Motion to Suppress, arguing that officers lacked reasonable suspicion

or probable cause to effectuate a car stop. On February 17, 2016, the trial court heard testimony on the Motion to Suppress. In its Pa.R.A.P. 1925(a) Opinion, the trial court summarized the testimony adduced at the hearing as follows:

> According to the testimony of Police Officers Timothy Bogan and Jose Candelaria, on January 7, 2015, at approximately 12:10 p.m., Officers Bogan, Candelaria, and Devo[,] who were assigned to the Narcotics Bureau[,] were in an unmarked police vehicle in plain clothes on the 500 block of Allengrove Street in the City and County of Philadelphia in an [*sic*] narcotics surveillance unrelated to [Appellee]. While Officers Bogan, Candelaria, and Devo were conducting their unrelated narcotics surveillance they observed an unknown black male on his cell phone counting an unknown amount of United States Currency [("USC")]. According to police officers[,] this unknown black male was also looking into vehicles as they passed and approximately three (3) minutes later he entered a Toyota Camry driven by [Appellee]. Merely due to the aforementioned observations, Officers Bogan, Candelaria, and Devo decided to follow [Appellee] driving her Toyota Camry with this unknown black male passenger. According to the officers' testimony, [Appellee] stopped at the end of the block after picking up her passenger and the unknown black male exited the vehicle. The unknown black male was never stopped by any police officer.
>
> Thereafter, Officers Bogan, Candelaria, and Devo continued following [Appellee] for several blocks as she made multiple turns on unknown side streets. While the officers were following [Appellee], Officer Bogan attempted to have [Appellee] stopped by utilizing police radio [and] requesting a marked vehicle to stop the Toyota Camry; however, there were no marked vehicles in the area. Thus, police continued to follow [Appellee,] who drove through a mall parking lot and exited on to another street. At this point, Officer Bogan again requested a marked police vehicle over radio to stop the Toyota Camry; however, once again there were no marked vehicles available. The officers continued following [Appellee,] who drove to a mall on Cottman Avenue where she parked her car in front of a Macy's and went inside. [The officers followed Appellee into the Macy's.] Once inside, Officers Bogan, Candelaria, and Devo continued to follow

her and observed her pick out items from the Polo section and proceed[] to the checkout counter where she paid for the selected items. At some point (before reaching Macy's but after police officer's [*sic*] initial request for an unmarked [patrol car] to stop [Appellee]), Officer Bogan [testified that he believes he] ran the tag of the Toyota Camry and "the tag came back inconclusive;" the computer inquiry yielded no recorded owner[3] for the tag.

> [3] Police officers never testified nor were any explanations given as to how the computer could yield such a result as all tags should reasonably be issued to some entity.

As [Appellee] was inside Macy's with Officers Candelaria and Devo surveilling, Officer Bogan stepped outside to check on the status of the requested marked vehicle in the area and learned that in fact one was available. Thereafter, [Appellee] exited Macy's, entered her vehicle, and as she approached the parking lot exit[,] the requested marked police vehicle stopped [Appellee]. Officers Bogan, Candelaria, and Devo immediately approach[ed] [Appellee's] vehicle. According to Officers Bogan and Candelaria, as they approached [Appellee's] vehicle they "smelled a strong odor of marijuana" emanating from inside the vehicle. Officer Bogan directed [Appellee] to step out of her car and noticed that the headliner[4] had a bulge. Officer Bogan ran his hand along the headliner and felt a plastic baggie which he pulled out and found seven (7) grams of marijuana. Thereafter, [Appellee] was arrested and recovered incident to the arrest was a cell phone, $385 USC, additional bags of marijuana, and a scale.

> [4] Officer Bogan described the "headliner" to be the place where the interior car roof meets the interior portion of the windshield.

Trial Court Opinion, filed 5/3/16, at 1-3 (unpaginated) (references to the record omitted).

At the close of the hearing, the trial court granted Appellee's Motion to Suppress, stating that the reason for the stop testified to by the officer "is

not equal to reasonable suspicion and/or probable cause." N.T., 2/17/16, at 27.

The Commonwealth filed a timely Notice of Appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.[1]

The Commonwealth raises the following issue for our review:

Did the lower court err in suppressing the eleven packets of drugs, scale, and other evidence recovered from the car driven by [Appellee], where officers had reasonable suspicion to stop the vehicle after a police computer inquiry revealed that it had no registered owner, and where the totality of the circumstances—above all, the strong odor of marijuana detected by the officers upon approaching the vehicle—created probable cause to search the car and arrest [Appellee]?

Commonwealth's Brief at 4.

We begin by noting that the trial court found that police officers lacked reasonable suspicion to stop Appellee for two reasons: (i) because the police officers' subjective reason for pulling Appellee over was unrelated to the "inconclusive" results of the tag search;[2] and (ii) because the "inconclusive"

---

[1] On January 13, 2017, the Commonwealth filed a second Application to File Reply Brief Out of Time as well as an untimely Reply Brief. As the Reply Brief was submitted contemporaneously with the Application, and this Court received and reviewed the Reply Brief, we deny the Commonwealth's Application as moot.

[2] At the hearing, Officers Bogan and Candelaria both testified that their subjective reason for stopping Appellee was based on seeing the black male counting money before briefly entering and then exiting Appellee's vehicle. On appeal, the Commonwealth does not argue that these observations support a finding of reasonable suspicion; instead, the Commonwealth relies solely on the possible "inconclusive" results to justify the initial stop of Appellee.

results of the tag search were insufficient to provide reasonable suspicion to stop Appellee. Trial Court Opinion at 8 (unpaginated). As the Commonwealth correctly points out, the trial court erred in considering the officers' subjective intent, rather than applying an objective standard to the facts. *See Commonwealth v. Zhahir*, 751 A.2d 1153, 1156 (Pa. 2000) ("The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man or reasonable caution in the belief that the action taken was appropriate." (citation and quotations omitted)). Nonetheless, we agree with the trial court that a police officer's testimony that he ran a search of Appellee's tags that **possibly** came back "inconclusive" is insufficient to support a finding of reasonable suspicion to stop a vehicle.

Our standard of review applicable to suppression determinations is well-settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Nester*, 709 A.2d 879, 880-81 (Pa. 1998).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable

searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from . . . [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Fuller*, 940 A.2d 476, 478 (Pa. Super. 2007).

"[W]hen the police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants are considered 'seized' and this seizure is subject to constitutional constraints." *Commonwealth v. Swartz*, 787 A.2d 1021, 1024 (Pa. Super. 2001). A traffic stop is justified when police can point to objective facts creating a reasonable suspicion either that there has been a violation of the Motor Vehicle Code or that a crime has been or is being committed by its occupants. *See Commonwealth v. Hendricks*, 927 A.2d 289, 290 (Pa. Super. 2007).

Importantly, "[o]nce a [M]otion to [S]uppress [E]vidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); *see also* Pa.R.Crim.P. 581(H). "At the

suppression hearing, the Commonwealth has the primary burden of both production under 581(H) and persuasion (as the official comment instructs) to convince the court that the evidence was legally obtained." ***Commonwealth v. Enimpah***, 62 A.3d 1028, 1031 (Pa. Super. 2013).

In the instant case, the Commonwealth relied solely upon the testimony of Officer Candelaria and Officer Bogan to oppose Appellee's Motion to Suppress. Officer Candelaria made no mention of running a search of Appellee's tags. The entirety of Officer Bogan's brief testimony about the tag search was as follows:

> **[Commonwealth]**: Now, Officer, when you initially were following the car on the side street where there was a lot of turns on the side street. What investigation did you do into the vehicle you were following?
>
> **[Officer Bogan]**: We did run the tag for an owner, and **I believe** the tag came back inconclusive.
>
> **[Commonwealth]**: Now, when you say inconclusive, what does that mean?
>
> **[Officer Bogan]**: There was no record of an owner of that tag.

N.T., 2/17/16, at 18 (emphasis added).

We must consider whether a police officer's testimony, that he believes he ran a driver's tags and that the results came back "inconclusive," is sufficient to provide reasonable suspicion to stop a vehicle. We conclude that it does not.

First, Officer Bogan did not testify with any certainty about the results of the tag search.[3]  The Commonwealth had the burdens of production and persuasion, and Officer Bogan's statement that he **believes** the results were inconclusive falls short of meeting those burdens.  Second, as the trial court points out, Officer Bogan gave the court almost no context or information about those search results, including how they are possible, or where they came from.[4]  Finally, as the trial court notes, "[t]here is a significant difference between having an inconclusive result on a tag versus having a registration that has lapsed[,] or any indication of a stolen car[,] or even an indication that the car did not match the tag."  Trial Court Opinion at 8 (unpaginated) (footnote omitted).

Under these circumstances, we conclude that the Commonwealth did not satisfy its "burden [of] prov[ing], by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's

_____

[3] In its Pa.R.A.P. 1925(a) Opinion, the trial court expressed its skepticism of the testimony of Officer Bogan.  **Id**. at 3, n.5. ("Police officers never testified nor were any explanations given as to how the computer could yield such a result as all tags should reasonably be issued to some entity."). The trial court stops short, however, of providing an explicit finding of the credibility of Officer Bogan's testimony.  Nonetheless, the trial court's determination of credibility is not crucial to the disposition of the issue before us because, as discussed **infra**, even if credible, his limited testimony was insufficient to meet the Commonwealth's burden of establishing that there was reasonable suspicion to stop Appellee's vehicle.

[4] Although the Commonwealth's Brief makes multiples references to a "NCIC" search, Officer Bogan did not clarify where he ran a search of Appellee's tags.

rights." **Wallace**, 42 A.3d at 1047-48. The trial court, therefore, did not err when it granted Appellee's Motion to Suppress.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017