J-S66031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAKE KNIGHT, | |
| Appellant | No. 379 WDA 2017 |

Appeal from the Judgment of Sentence November 17, 2016
in the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0006386-2014

BEFORE:  BENDER, P.J.E., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:              **FILED NOVEMBER 29, 2017**

Appellant, Jake Knight, appeals from the judgment of sentence imposed after his jury conviction of second degree murder, conspiracy to commit burglary, burglary, and three counts of recklessly endangering another person.[1]  We affirm.

We take the following facts and procedural history from the trial court's May 8, 2017 opinion and our independent review of the certified record.

> On the evening of April 10, 2014, Tailyn Howard and Janelle Jones invited Lee Williams, Wesley Francis, and Roneka Baker to their apartment (17H) in Hawkins Village, in the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 903, 3502(a)(1), and 2705, respectively.

Borough of Rankin, Allegheny County. (**See** N.T. Trial Volume I, August 23-24, 2016, at 48; N.T. Trial Volume II, August 25-26, 2016, at 354-55, 415-16, 433). Francis and Baker arrived together, but Baker left shortly thereafter to check on her children in another apartment in Hawkins Village. Once Williams arrived, he, Francis, Howard, and Jones sat in the living room with the front door open, awaiting Baker's return. (**See** N.T. Trial Volume II, at 356, 416-17, 434, 436-37).

At approximately 8:00 P.M., Appellant and another individual entered Building 17, each armed with a gun, and each wearing a half-mask and all-black clothing. They ran up the staircase to Apartment 17H, and stood in the entrance to the living room. (**See** N.T. Trial Volume I, at 47[-48]; N.T. Trial, Volume II, at 356, 358-59, 364, 417-19, 437-39). Appellant and his accomplice pointed their guns at the individuals in the living room, and Appellant commanded them to "lay down." (N.T. Trial Volume II, at 360, 419-20). Williams and Francis stood up and told the masked intruders to "get the [F] out," but Appellant and his accomplice remained in the apartment with their guns pointed at Francis, Williams, Jones, and Howard. (**Id.** at 361; **see id.** at 421).

Williams picked up the coffee table that was in the middle of the room, and threw it towards Appellant and his accomplice. At the same time, Williams, Francis, Howard, and Jones fled towards the rear of the apartment, and Appellant shot Williams in the chest. Francis and Howard ran into separate bedrooms, and Jones ran into the laundry room; they closed their respective doors and hid. Wounded by the gunshot, Williams managed to run into the bathroom and close the door. (**See** N.T. Trial Volume I, at 63, 320; N.T. Trial Volume II, at 362-63, 365-66, 398, 400-402, 421-22, 440).

Appellant and his accomplice immediately fled from Building 17 and ran to the rear of Building 35. Appellant resided in Apartment 35B with his mother, who was known in the neighborhood as Miss Roxie. (**See** N.T. Trial Volume I, at 48, 80; N.T. Trial Volume II, at 422-23, 441).

After Appellant and his accomplice fled, Williams, Francis, Howard, and Jones slowly emerged from their hiding spots. Williams was bleeding profusely, and collapsed as he made his way into the kitchen. Francis, Jones, and Howard attempted to

stop the bleeding, but Williams continued to bleed profusely as he lay on the kitchen floor, choking on his own blood. (*See* N.T. Trial, Volume I, at 63; N.T. Trial Volume II, at 363, 366, 441). Francis called 911, and paramedics arrived shortly thereafter. [In the ambulance, Williams died from gunshot wounds to the chest. (*See* N.T. Volume II, at 367, 441)].

Police officers from the Allegheny Housing Authority and detectives from the Allegheny County Police Homicide Division responded to the scene and canvassed the area for the two masked gunmen. During their search, they recovered two firearms beneath the rear steps to Building 35, one Glock Model 31 .357 pistol and one Kel-Tec Model P-11 9mm Luger caliber pistol, each with a partially loaded magazine, and each with a cartridge in the chamber. (*See* N.T. Trial Volume I, at 48, 56, 80, 82, 85, 134-35). The firearms were not there when Chief Mike Vogel of the Allegheny County Housing Authority searched under the same steps earlier in the day while on routine patrol. (*See id.* at 93-95).

Officers interviewed Francis, Howard, and Jones. All three individuals identified Appellant as one of the masked gunmen. (*See id.* at 153-55; N.T. Trial Volume II, at 361, 367-68, 424, 445). This information was relayed to officers on scene. (*See* N.T. Trial, Volume I, at 155). A search warrant for Appellant's apartment was secured and executed at approximately 11:45 P.M. Appellant answered the door after several minutes, and the officers entered the apartment to conduct the search. (*See id.* at 97-99, 104, 121, 128-29). Appellant stated that he had been sleeping when the officers knocked. Chief Vogel observed fresh condensation on the bathroom walls and water beads in the shower, as if someone had recently showered. (*See id.* at 99, 101). Several articles of black clothing were seized, including a black neoprene half-mask, which was submitted to the crime lab for testing. (*See id.* at 123-25, 128).

Appellant was detained and transported to homicide headquarters for an interview. (*See id.* at 155-56). A gunshot residue kit was performed on Appellant's hands, a DNA swab was obtained, and his clothes were collected for testing at the crime lab. (*See id.* at 156, 161). During Appellant's interview, he indicated that he had invited friends over to his apartment that evening, and that he was in his apartment until police arrived. Appellant again stated that he had taken a shower

earlier in the day, not that evening. When asked about the firearms that were found under the steps to Building 35, Appellant stated that they had nothing to do with him. (**See id.** at 158-60, 162-63).

A gunshot residue kit was performed on Appellant's hands and jeans. The crime lab was unable to determine whether the components on Appellant's hands were gunshot residue because they were only single components and not characteristic particles, but the crime lab was able to determine that Appellant's jeans were positive for gunshot residue. (**See id.** at 311).

One .357 SIG shell casing was recovered from the living room of Apartment 17H. It was submitted to the crime lab for testing, along with the recovered firearms and a deformed hollow point 9mm projectile recovered from Williams during autopsy. The crime lab was able to determine that the recovered shell casing was discharged from the .357 Glock, and the projectile, while too damaged to make a precise match, was of the same class as the test projectile fired from the Glock. (**See id.** at 65, 324, 327, 337). Following a national database search, the Glock was also matched to a shell casing recovered from an incident in Hawkins Village [ten days earlier,] on March 30, 2014. In that incident Appellant was identified as being involved in a shootout in Hawkins Village, and similarly removing a firearm from his person behind Building 35. (**See** N.T. Trial Volume II, at 347, 349, 369, 371).

(Trial Court Opinion, 5/08/17, at 6-11) (some record citation formatting provided; footnotes, some quotation marks, and some record citations omitted).

On August 26, 2016, the jury convicted Appellant of the above-mentioned charges. The court sentenced him on November 17, 2016 to a term of life imprisonment on the second degree murder charge, plus an aggregate sentence of not less than one nor more than two years on the conspiracy and reckless endangerment charges, to be served concurrently.

No further penalty was assessed on the burglary conviction. Appellant filed timely post-sentence motions that the trial court denied on February 15, 2017. Appellant timely appealed on March 6, 2017.[2]

Appellant raises three questions for our review:

[I.] Did the [trial court] err in finding that [Appellant] has waived the issue of witness competency?

[II.] Did the [t]rial [c]ourt err in allowing the Commonwealth to present evidence of an alleged prior bad act, when [Appellant's] role in the alleged act was completely unknown, in violation of Pa.R.E. 404(b)?

[III.] Did the [t]rial [c]ourt err in denying [d]efense [c]ounsel the opportunity to examine the source code for the "TrueAllele" software used to perform DNA combination analysis?

(Appellant's Brief, at 3).

In his first issue, Appellant argues that the trial court erred in finding Ms. Jones and Mr. Francis were competent to testify, and that he waived this issue on appeal. (*See id.* at 12-21). We agree with the trial court that Appellant's issue is waived.

It is well-settled that:

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

---

[2] Pursuant to the trial court's order, Appellant filed a timely statement of matters complained of, on March 28, 2017. The court filed an opinion on May 8, 2017. *See* Pa.R.A.P. 1925.

*Commonwealth v. Akrie*, 159 A.3d 982, 986-87 (Pa. Super. 2017) (citation omitted).

Further:

> Consistent with . . . Pa.R.E. 103(a), a motion in *limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. **Once the trial court enters a definitive ruling on the record**, either prior to or during trial, "a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Pa.R.E. 103(b).

*Commonwealth v. McGriff*, 160 A.3d 863, 866 (Pa. Super. 2017) (case citation and most quotation marks omitted; emphasis added).

Here, in his motion *in limine*, Appellant raised the issue of the competence of Ms. Jones and Mr. Francis to testify. (*See* Appellant's Motion *in Limine*, 5/13/15, at 3-8). However, the docket and the record are devoid of any ruling on the motion, and the record citation Appellant provides, Docket Entry 10, does not contain any order or finding by the court on this issue. (*See* Trial Court Docket Number CP-02-CR-0006386-2014, at 8-12). Therefore, because the certified record does not reflect any definitive pre-trial ruling on Appellant's motion, Appellant was required to renew his competency objection at trial to preserve the issue for appeal. *See McGriff*, *supra* at 866.

> If a party is in doubt as to the competency of a witness, he should examine him in that regard, and the court should make a determination thereon preliminarily when the witness is produced. So, ordinarily, the competency of a [witness] is to be determined at the time he is offered as a witness. . . . [C]ross-

- 6 -

examination, coupled with the failure to object at any time during the trial, constitutes a waiver of objection as to the competency of [a] witness. . . .

**Commonwealth v. McKinley**, 123 A.2d 735, 737 (Pa. Super. 1956) (citations and quotation marks omitted).

Here, Appellant failed to raise any objection to the competency of Ms. Jones and Mr. Francis when they were offered as witnesses at trial. (**See** N.T. Trial Volume II, at 353, 432). He also cross-examined them both fully. (**See id.** at 373-408, 412, 446-459). Therefore, we agree that Appellant's issue is waived.[3] **See McKinley**, **supra** at 737.

_____

[3] Moreover, we note briefly that the issue would not merit relief. "The rule is well-established in Pennsylvania that the party seeking to challenge the competence of a witness has the burden of proving that the witness is not competent." **Commonwealth v. Stoner**, 425 A.2d 1145, 1150 (Pa. Super. 1981) (citation omitted). Appellant has not met his burden. He argues that Ms. Jones and Mr. Francis were incompetent to testify because their identification of who committed the shooting was speculative and unreliable where they did not actually witness the firing occur. (**See** Appellant's Brief, at 13-18). First, this claim goes to the weight to be afforded the identification testimony, not its admissibility, and it was within the province of the jury to weigh the evidence. **See Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*), *appeal denied*, 54 A.3d 348 (Pa. 2012) ("[A]ny indefiniteness and uncertainty in [] identification testimony goes to its weight.") (citation omitted); **see also Commonwealth v. Sanchez**, 36 A.3d 24, 26-27 (Pa. 2011), *cert. denied*, 568 U.S. 833 (2012) ("The finder of fact—here, the jury—exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.") (citation omitted). Additionally, the trial court instructed the jury on both witness credibility and identification testimony, which the panel is presumed to have followed. (**See** N.T. Trial Volume II, at 549-54); **see also Commonwealth v. Chmiel**, 30 A.3d 1111, 1147 (Pa. 2011) ("The jury is presumed to have followed the court's instructions.") (citation omitted). Therefore, the trial court did not abuse its discretion in
*(Footnote Continued Next Page)*

In his second issue, Appellant maintains that "the trial court erred in allowing the Commonwealth to present evidence of an alleged prior bad act, when [Appellant's] role in the alleged act was completely unknown in violation of Pa.R.E. 404(b)." (Appellant's Brief, at 18) (unnecessary capitalization and emphasis omitted). He argues that "the suggestion that [he] was involved in a prior shooting provides a basis for the jury to engage in baseless speculation about [his] character." (*Id.* at 21). This issue lacks merit.

As stated previously, the admission of evidence is in the sound discretion of the trial court. *See Akrie*, *supra* at 986-87.

> In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Rashid*, 160 A.3d 838, 842 (Pa. Super. 2017), *appeal denied*, 2017 WL 3393565 (Pa. filed Aug. 8, 2017) (citation omitted).

Pursuant to Pennsylvania Rule of Evidence 404(b)(1): "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in

*(Footnote Continued)* _____

allowing the testimony, and, even if not waived, Appellant's first issue would lack merit. *See Akrie*, *supra* at 986-87.

- 8 -

order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1).

> However, evidence of prior bad acts is admissible for other purposes, including proof of an actor's plan or proof of his identity, where the probative value of the evidence outweighs its potential for prejudice. Pa.R.E. 404(b)(2)[,] (3). . . .

> \* \* \*

> . . . [Rule] 404(b) is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior **crimes** and prior **wrongs and acts**, the latter of which, by their nature, often lack definitive proof. . . .

*Commonwealth v. Lockcuff*, 813 A.2d 857, 860-61 (Pa. Super. 2002), *appeal denied*, 825 A.2d 638 (Pa. 2003) (citing Pa.R.E. 404(b)(2)) (quotation marks, case citation, and footnote omitted; emphasis in original). "Where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose." *Commonwealth v. Solano*, 129 A.3d 1156, 1178 (Pa. 2015) (citation omitted).

Here, the Commonwealth introduced evidence of a March 30, 2014 shootout that involved the same firearm that was used to kill the victim, Lee Williams, in this case. The March incident occurred only ten days prior to the Williams shooting, and also happened at Hawkins Village. Wesley Francis identified Appellant as being present during the March incident, and stated that Appellant fled to the rear of Building 35, where he dumped a firearm and removed his mask. (*See* N.T. Trial Volume II, at 347, 370-71).

After the Commonwealth presented this evidence, the trial court instructed the jury on its limited use for the purpose of identity only. (*See id.* at 554).

Based on the foregoing, we conclude the evidence of a prior bad act properly was used where it was relevant for the limited purpose of establishing Appellant's identity. *See Lockcuff*, *supra* at 860-61. After the evidence's introduction, the trial court appropriately issued the jury an instruction on its limited use, thus reducing the possibility that they would "engage in baseless speculation about [Appellant's] character." (Appellant's Brief, at 21); *see Solano*, *supra* at 1178; *see also Chmiel*, *supra* at 1147. Therefore, the trial court properly exercised its discretion in allowing the introduction of the prior bad act evidence. *See Rashid*, *supra* at 842. Appellant's second issue lacks merit.

In his third claim, Appellant maintains that "the trial court erred in denying defense counsel the opportunity to examine the source code for the TrueAllele software used to perform DNA combination analysis." (Appellant's Brief, at 21) (unnecessary capitalization, quotation marks, and emphasis omitted). This issue lacks merit.

> The standard of review applicable to denial of a discovery motion is whether the trial court abused its discretion. Under Pa.R.Crim.P. Rule 573(B)(2)(a), upon a defendant's motion for pretrial discovery, the trial court "may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph" certain requested items (enumerated in the Rule) "upon a showing that they are material to the preparation of the defense, and that the request is reasonable." Within the enumerated list of items a defendant may request is "any other evidence specifically identified by the defendant, provided the

defendant can additionally establish that its disclosure would be in the interests of justice." Pa.R.Crim.P. 573(B)(2)(a)(iv).

*Commonwealth v. Snell*, 811 A.2d 581, 591 (Pa. Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003) (case citation omitted).

In this case, the trial court explains:

> Here, Appellant sought to compel discovery of the source code for Dr. Mark Perlin's TrueAllele software program. This request was denied by the [the trial court]. Several courts of concurrent jurisdiction have addressed the discoverability of TrueAllele's source code. Here, [the court] relied on the reasoning of the Honorable Jill E. Rangos in one such case, and[, pursuant to Appellant's motion,] incorporated that decision and record in denying Appellant's request herein. (*See* Orders, 3/28/16; Order, 4/11/16; Appellant's Motion to Incorporate Proceedings into the Record, 2/18/16). In her memorandum opinion, Judge Rangos relied on *Commonwealth v. Foley*, 38 A.3d 882 (Pa. Super. 2012), *appeal denied*, 60 A.3d 535 (Pa. 2013), and held that TrueAllele was not novel science, the reliability of TrueAllele could be determined without the source code, and "the source code [was] not material to defendant's ability to pursue a defense." *Commonwealth v. Robinson*, Docket No. CC 201307777, Memorandum Order, 2/04/16, at 2.

> [The trial court] found that the source code itself was not material to the credibility of Dr. Perlin and the reliability of TrueAllele, and that those were matters properly addressed by cross-examination.[a] . . . *See Foley*, *supra* at 889-90 (release of TrueAllele's source code is unnecessary to test its reliability, TrueAllele has been tested and validated without release of the source code, and there is no legitimate dispute over Dr. Perlin's methodology).

> > [a] At trial, Dr. Perlin explained the methodology of TrueAllele, and was subjected to extensive and thorough cross-examination on the reliability and testability of TrueAllele. (*See* N.T. Trial Volume I, at 265-89).

(Trial Ct. Op., at 16-17) (some record and case citation formatting provided).

We agree with the findings of the trial court and conclude that Appellant failed to prove the source code was "material to the preparation of the defense, and that [his] request [was] reasonable." *Snell*, *supra* at 591 (citations omitted). In fact, this Court has observed that "scientists can validate the reliability of a computerized process even if the 'source code' underlying that process is not available to the public." *Foley*, *supra* at 889. Also, in conformity with the confrontation clause, Appellant had a full and fair opportunity to cross-examine Dr. Perlin about the reliability of TrueAllele. *See Commonwealth v. Wilson*, 602 A.2d 1290, 1296 (Pa. 1992), *cert. denied*, 504 U.S. 977 (1992) (the confrontation clause guarantees "an opportunity for effective cross-examination, not cross-examination that is effective whatever way, and to whatever extent, the defense might wish.") (citation omitted).

Accordingly, the source code for TrueAllele was not material to Appellant's defense and his request to compel its production was not reasonable. *See id.* Hence, the trial court did not abuse its discretion in

denying Appellant's motion to compel. ***See Snell***, ***supra*** at 591.

Appellant's third issue lacks merit.[4]

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2017

---

[4] Moreover, we are not legally persuaded by the cases Appellant relies on for his confrontation clause argument. (***See*** Appellant's Brief, at 21-26). The cases are not pertinent where none of them hold that a prosecution must provide a computer source code in discovery to provide a defendant with his confrontation clause rights. (***See id.*** at 22-23).